**THE DISTRICT COURT OF GUAM**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. 19-00048 |
| Plaintiff, | **DECISION AND ORDER RE: MOTION FOR DOWNWARD VARIANCE** |
| vs | |
| RICHARD A. GAPASIN, JR., | |
| Defendant. | |

  This matter is before the court on Defendant's motion for downward variance. He is specifically requesting the court to sentence him to 36 months of imprisonment, instead of the 87-108 months of imprisonment he faces per the Sentencing Guidelines. Although the prosecutor did not make a §5K1.1 motion and does not support a downward variance, counsel for Defendant argues the court should nevertheless consider the nature and circumstances of Defendant's cooperation and grant him a variance. After a review of the arguments and evidence presented to the court following a marathon sentencing hearing lasting 8 separate court days, including today, the court finds that the prosecutor did not give Defendant the full benefit of his bargain as represented in the plea agreement, and thus will grant a variance.

## **DISCUSSION**

### ***Background***

  On December 17, 2019, Defendant Richard Gapasin, Jr., was arrested on attempted possession of methamphetamine and conspiracy to distribute methamphetamine. Defendant

subsequently entered into a plea agreement,[1] wherein the prosecutor explicitly promised Defendant that he would receive an opportunity to cooperate with law enforcement with the hope of inducing the prosecutor assigned to this case, Stephen Leon Guerrero, to make a § 5K1.1 motion.  Two months after his arrest, Defendant appeared before the court on February 12, 2020 and entered a guilty plea pursuant to the amended plea agreement. Due to Defendant's ongoing cooperation, the prosecutor recommended continuance of the matter twice during the summer of 2020 before finally asking the court to set a sentencing date. ECF Nos. 41, 48, 53. The court scheduled Defendant's sentencing for March 30, 2021. Several witnesses testified, and several exhibits were admitted during the sentencing hearings.

Prior to the sentencing, the prosecutor filed a sentencing memorandum. ECF No. 66. Therein, he represented that he would move for a three-level downward departure for Defendant's acceptance of responsibility pursuant to U.S.S.G. §3E1.1(a)-(b). He also represented that Defendant was entitled to a two-level decrease under U.S.S.G § 2D1.1(b)(18) as Defendant appeared to have met the criteria set forth in § 5C1.2, which corresponds with the so-called "safety valve" provisions in 18 U.S.C. 3553(f). He recommended that Defendant serve a sentence on the low end of the applicable guideline range.

### *Gapasin's Sentencing Hearings*[2]

### *Variance motion by Public Defender*

The first sentencing hearing occurred on March 30, 2021. ECF No. 69. Counsel for Defendant, Public Defender Brianna Kottke, somewhat unexpectedly, stated that she would be seeking a variance for her client due to the nature and circumstances of his cooperation

---

[1] At the hearing, the court noted several deficiencies in the amended plea agreement itself as further set forth on the record.

[2] The court held eight (8) sentencing hearings which occurred on the following dates: March 30, 2021 (ECF No. 69); April 1, 2021 (ECF No. 75); April 8, 2021 (ECF No. 81); April 9, 2021 (ECF No. 82); April 14, 2021 (ECF No. 83); April 20, 2021 (ECF No. 88); April 22, 2021 (ECF No. 89); and today. All the hearings were sealed to prevent jeopardizing any ongoing or future investigations.

with law enforcement. The prosecutor informed the court that he had not made a §5K1.1 motion, and thus the court should disregard Defendant's arguments, or at least have the matter briefed.

Defense counsel clarified that she recognized the Government had sole discretion to file a §5K1.1 motion. However, she argued that the court could still consider the nature and circumstances of Defendant's cooperation for purposes of a variance. She also pointed out that in the Form AO 245SOR, "Judgment in a Criminal Case Form (Statement of Reasons)," one of the boxes allows the court to grant a variance for "Cooperation Without Government Motion for Departure."

Given that this was the first time the prosecutor had received notice of the public defender's intention to seek a variance, the court gave him the option to continue the hearing. However, the prosecutor declined the court's offer and represented he was ready to proceed. Thus, the court pressed on.

### Defendant provided information to 4 federal law enforcement agencies during 3 debriefing sessions

Defense counsel submitted evidence concerning three debrief interviews that Defendant gave in 2020. ECF No. 69-1. To verify the information disclosed in these debriefs and to understand the full nature of Defendant's cooperation, the court heard extensive testimony from multiple law enforcement agents who had been present at the debriefs. These officers included representatives from Homeland Security Investigations, United States Postal Inspection Service, the Drug Enforcement Agency, and the Federal Bureau of Investigation. The court requested that the Resident Agents in Charge of these federal agencies also appear in person and be heard.

The testimonies and supporting evidence established that Defendant had provided fifteen (15) different names of individuals who had been involved in the drug trade on

Guam.[3] He also provided personal details about those named individuals, including contact information and phone numbers, maps of their residences, and even explained which of the individuals had firearms. He provided details about the vehicles used by these individuals and provided license-plate numbers. He provided details about how these named individuals would conduct drug transactions, including details about where they would hide drugs, who they would sell drugs to, and how money exchanged hands. He provided details about both his on-island and off-island source of supply. Of particular import, Defendant provided information relating to three potential public corruption activities on Guam, including details about criminal activities in which local government employees in three separate government entities may be committing.

### *Failure to follow up on Defendant's information and share information between agencies*

After each agent finished, the court asked each to evaluate the value of Defendant's cooperation on a scale of one to ten, with ten representing "substantial assistance." Several of the agents opined that the information Defendant gave was either historical, or too general and vague for it to bear out any criminal investigation.

Some of the agents expressed great difficulty in providing a specific evaluation of Defendant's cooperation. When asked why that was the case, several agents, including some of the Resident Agents in Charge, represented that they could not analyze the helpfulness or accuracy of Defendant's information because they had been unable to follow up or investigate the information. The reasons for this varied. One reason was that there were limited resources. Another reason given was that the agencies have competing priorities which dictated whether a follow-up investigation on debrief information from a cooperating defendant would be initiated. For example, the officers for the United States Postal

---

[3] Although seven of the eight hearings were under seal, the court has gone to great lengths to ensure that no names or details are revealed that would jeopardize any investigation.

Inspection Service testified that their main and limited focus is to prevent drugs from entering the mail system, as opposed to making drugs busts on the street. One postal inspector in particular (Richard Tracy) added that the main focus for the Drug Enforcement Agency is to combat drugs on the streets of Guam; the Federal Bureau of Investigation's main focus is to stamp out public corruption committed by government workers; and Homeland Security Investigation's focus is broader. It has the discretion to investigate not only a larger number of criminal cases but also a more varied type including drugs in the mail, drugs on the street, public corruption, mail fraud and so on.

In addition, several agents testified that there were issues arising from the sharing of information, or lack thereof, among the federal law enforcement agencies, citing several reasons. One such reason was the need to maintain the integrity of ongoing investigations. Integrity could be lost if there was another unknown confidential and cooperating informant working a case with a different federal law enforcement agency. The sharing of information with another agency could compromise an ongoing investigation. Another reason given was the existence of differing policies pertaining to the sharing of debriefing information by a cooperating defendant in a joint investigation such as the case before the court where there are four different federal agencies debriefing Defendant. The agents testified that the sharing of information with a local task force could and has, in fact, led to compromising leaks which in turn have affected major criminal investigations. Lastly, several agents referenced the failure of an agency to reach out and ask another agency for help. For example, one agent testified that had he been asked to share critical debriefing information provided by Defendant at the debriefing sessions, he would have done so easily, but simply put, no one asked.[4]

---

[4] For example, the United States Postal Inspection Service may have had information that could have been helpful to the Drug Enforcement Agency.

### *Law Enforcement's Evaluation*

Whatever the reason, the testimony in its totality established that much of the information Defendant provided had not been vetted for its value. Notwithstanding that, the consensus among the agents was that Defendant had been truthful and honest. Each agent eventually, but reluctantly, valued Defendant's cooperation with a positive number, ranging from a one to four based on the court's hypothetical scale ranging from 0 (no cooperation) to 10 (substantial cooperation leading to substantial assistance as defined under 5K1.1).

Law enforcement agents have specialized training and are far closer to criminal investigations and more intimately knowledgeable about criminal intelligence in any given case than a sentencing judge. As a result, a court should normally defer to law enforcement's evaluation of a criminal defendant's information provided pursuant to a plea agreement. This court finds most of the agents were credible, well-intentioned officers of the law. Although Defendant's information was not fully vetted, the court does not fault the difficult decisions made by law enforcement in the face of limited resources and the risks they incur in combating the drug plague and public corruption affecting the island community.[5]

### *Lack of courtroom decorum, candor, and leadership in handling this case by the prosecutor and the Drug Enforcement Agency Resident Agent in Charge*

Unfortunately, however, the same cannot be said for prosecutor Stephen Leon Guerrero and the Resident Agent in Charge of the Drug Enforcement Agency, Ken Bowman. First and foremost, both individuals displayed unprofessional conduct during several of the sentencing hearings. Rather than responding to the court's questions, they both appeared to

---

[5] Of the Resident Agents in Charge and agents who were involved in Defendant's case, the court especially found that Connie Worrel and Richard Tracy from the United States Postal Inspection Service, Michael Lansangan and Erwin Fejeran from Homeland Security Investigations, and Joseph Stranz from the Federal Bureau of Investigation were respectful, candid, credible, and provided helpful testimony to the court.

be nonchalant, with both going so far as laughing for unknown reasons during their testimony and argument.[6]

Putting the unprofessionalism aside, the testimony provided to the court indicated a real disconnect between the legal representations made by the prosecutor and Resident Agent in Charge Bowman, and what the other agents had stated in their testimony. This disconnect reflects a lack of or complete breakdown of communication between the Government and the agencies and agents. It seems this is largely due to a lack of initiative in investigating Defendant and the information he provided. When asked numerous times by the court as to who facilitates and leads the 4-agency joint investigative debriefs in hopes of a 5K1.1 motion, the prosecutor responded that it was up to the individual agencies. Yet, he was unable to identify one leader or facilitator. When the court queried his supervisor, Criminal Chief Marivic David, she, without hesitation said the line prosecutor or Assistant United States attorney assigned to the case is the lead person who works in tangent with the lead federal law enforcement agency, which in the instant case, would have been the United States Postal Inspection Office. Chief David insisted that prosecutor Leon Guerrero not only assumed the leadership position but carried it out properly. The court vehemently disagrees. In fact, the court finds there was no one leading this "joint" investigation. This utter lack of prosecutorial leadership coming from the United States Attorney's Office to facilitate cooperation and coordination among all 4 federal agencies compromised an important drug investigation and potentially even prevented public corruption from being ferreted out.[7]

---

[6] The court notes that the United States Attorney, Shawn Anderson, also acted unprofessionally in court by shaking his head during the April 8, 2021 hearing during the court's questioning.

[7] This lack of follow up or further investigations may in large part go to answering this Court's growing concern over the precipitous decline in case filings under this United States Attorney. While the Superior Court of Guam is teeming over with cases this Court in stark contrast shows case filings trickle in at an alarmingly low number. While it would be comforting to attribute this to less criminal activity, the reality is far more disturbing. Criminal activities are simply not being investigated and charged.

In an attempt to assuage the court's concerns, Resident Agent in Charge Bowman testified that he spoke to newly hired Drug Enforcement Agency Agent, Jason Correa, about the case several times and that he himself "read the reports of the Defendant's arrest and so forth." However, the sparse information testified to by Agent Correa suggests otherwise. Resident Agent in Charge Bowman acknowledged that his agent, Agent Correa wrote no report at the time of the second debrief held on June 11, 2020 yet, he submitted a written report 8 months later which was one month before Defendant's sentencing hearing. No explanation was ever given as to why there was this long lapse in writing a Drug Enforcement Agency report and why the report was written so close to the sentencing date. Agent Correa testified that he did not recall if he himself asked questions at the second debrief session and admitted he conducted no follow up investigation on any of Defendant's proffer of information. He further testified that Defendant made no mention of dates, events or names of any Guam and stateside supplier or distributor of drugs involved with Defendant; yet, the proffer submitted by the defense reveals a different account. In fact, it appears that names were given for both suppliers, yet the agent and his Resident Agent in Charge never investigated them. Agent Correa further testified he was given no access to inspect the United States Postal Inspection file because of an ongoing public corruption investigation by the Federal Bureau of Investigation and Homeland Security Investigations. However, it is undisputed that he failed to even request access. Both the United States Postal Inspector Connie Worrel and Agent Fejeran in fact testified that had a request been made, they would have easily shared their intelligence and follow up investigation results.

Resident Agent in Charge Bowman testified about the intensive level of appraisal he experienced regarding the Drug Enforcement Agency's involvement with Defendant. It was no less than 15-20 different occasions. Although Resident Agent in Charge Bowman told the court he knew what was going on with the Drug Enforcement Agency, his agent, and

Defendant, the testimony showed an entirely different story, one of carelessness, sloppiness, and frankly indifference. Resident Agent in Charge Bowman assured the court that he was apprised extensively by the prosecutor about Defendant's cooperation by telephonic calls and emails. However, he initially testified that he assumed Defendant's stateside drug supplier (a name given by Defendant) was fully investigated in a particular state, when in fact, he really had no knowledge of this. The court asked Resident Agent in Charge Bowman, "if the head of DEA doesn't know if the main [off island] drug supplier to the Defendant was being investigated by DEA, then who the hell would know?" He failed to give an answer. At a subsequent hearing, Resident Agent in Charge Bowman returned to the stand and tried to explain that he had been informed that the name given by Defendant to Agent Corrales of the Drug Enforcement Agency was not a "real name."[8] Unfortunately, Agent Bowman, like Prosecutor Leon Guerrero, failed in his duty to lead his agency, failed in his duty to investigate, failed in his duty to communicate and lastly, failed in his duty to coordinate. The failure by both of these men has left our island community less safe.

### *Prosecution evaluation – safety valve*

As for the prosecutor, in final arguments he admitted the testimony provided by the agents indicated that Defendant had attempted to cooperate and that he had provided a great deal of information. Nevertheless, the prosecutor persisted in his recommendation that the value of Defendant's cooperation was zero and thus Defendant did not deserve a variance even though several agents had testified they had not even vetted some of the evidence and other parts of the evidence resulted in a 1-4 level of cooperation based on the court's scale of 1-10.

---

[8] Agent Mantaguihan testified that he did investigate the off-island supplier by using a photo identification provided by Defendant, and that it matched the name of a known off-island drug supplier consistent to the identity provided by Defendant.

Several United States Attorneys in this case, including the prosecutor, his Criminal Chief, and a fellow prosecutor in the same office argued that the court's concern – that it could not fairly sentence Defendant as it does not currently know the actual significance of the information Defendant provided – was unfounded for several reasons. One such reason was the applicability of the so-called "safety valve" as described in 18 U.S.C. § 3553(f) and as further detailed in §5C1.2. The court finds the argument astounding and flatly rejects it.

The safety valve as stated in § 3553(f) removes the statutory minimum for defendants facing certain charges and only in certain situations. Among those situations, a defendant is only entitled to the safety valve if

> not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f). According to the United States, this provision shows that Congress foresaw the court's concerns that a defendant should be awarded for providing less-than-helpful information, and thus provided such a defendant would still be entitled to qualify for the safety valve.

For one, Defendant's eligibility for the safety valve and his eligibility for a variance are not mutually exclusive concepts. Regardless, under Application Note 5 to 5C1.2(a), the phrase "offense or offenses that were part of the same course of conduct or of a common scheme or plan" actually means "the offense of conviction and all relevant conduct." Here, Defendant provided additional information that did not relate to the offense of conviction and relevant conduct. For example, Defendant provided information that could be relevant to public corruption. This type of information is wholly unrelated to the charged crime and thus not within the purview of § 3553(f).

*Prosecutor evaluation - Failure to bring a 5k1.1 Motion and to honor a Plea Agreement*

Putting this misunderstanding of the safety valve provisions and the unprofessional conduct aside, the most troublingly aspect of this case is the prosecutor's representation that Defendant's information was worth nothing, when that determination cannot fairly be made at this juncture because much of the information had not been vetted at all by law enforcement. Asserting that information is worthless is far different from asserting that information has an unknown value.

To further compound the situation, the United States Attorney Shawn Anderson, the prosecutor, and Resident Agent in Charge Bowman all blindly agreed with each other. In particular, Resident Agent in Charge Bowman testified under oath that "he would agree with whatever the United States Attorney's office would recommend" as to whether a 5K1.1 motion should be granted and as to their assessment of the value or non-value of Defendant's cooperation. Incredulously, Resident Agent in Charge Bowman continued to tell the court that "he would agree with whatever the prosecutor would recommend regardless of his own independent opinion." He went on to explain that his motive to automatically agree with the prosecutor is because he wants to maintain a good working relationship with the United States Attorney's office. Again, this court is troubled by this statement if it is to be believed.

This unified, unconsidered assessment worries the court that this problem is more likely an endemic one percolating within the US Attorney's office and the Drug Enforcement Agency and perhaps even in the other federal law enforcement agencies serving Guam and the CNMI. This basic lack of understanding one's fundamental role and mission when working with a multi law enforcement agency debriefing with a cooperating defendant is troublesome and does not bode well for the safe keeping and security of our island. Drug dealers both on and off island and public corruption in government goes unchecked. Indeed,

if Defense counsel had not raised the issue, the court likely would have never heard any evidence of the debriefing at all.

The court recognizes that prosecutors are given discretion in how they prosecute a case. The court also recognizes that it is within the discretion of a United States prosecutor to bring a §5K1.1 motion. Absent evidence of impermissible motives, a court normally may not grant relief for the refusal of a prosecutor to bring a §5K1.1 motion. *United States v. Flores*, 559 F.3d 1016, 1019 (9th Cir. 2009). Here, the court does not believe any such impermissible motive exists, even though it seriously questions whether the prosecutor was able to, in good faith, adequately consider whether Defendant was entitled to a §5K1.1 motion when he himself did not know the value of the information Defendant provided. The lack of understanding basic rules of law relating to cooperation through a traditional garden variety safety valve analysis and or through a 5K1.1 motion has proven to be all too illusive in the case at bar.

The court may consider the failure of a prosecutor to honor the terms of a plea agreement. Here, the court does have serious concerns with whether Defendant was given the full benefit of his bargain when he exchanged his right to a trial for the opportunity to receive a lessened sentence. Defendant entered into an amended plea agreement on February 12, 2020. ECF No. 22. As part of that plea agreement, the United States agreed to

> furnish the Defendant an opportunity to provide 'substantial assistance,' that is, information and assistance in the investigation and prosecution of others. The Defendant agrees to meet with federal and state law enforcement agents in an attempt to assist them in obtaining information that would form the basis of a motion filed pursuant to U.S.S.G § 5K1.1 and/or 18 U.S.C. § 3553(e). The Defendant understands that whether any such information amounts to substantial assistance is a determination left to the United States Attorney's Office….The Defendant agrees that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if the Defendant fails to provide truthful, complete and honest information during debriefings, testimony before the grand jury, or any court proceedings….If a 'substantial assistance' motion is filed, both the United States and the Defendant will be free to make a specific recommendation with respect to that sentence. It is understood that the

United States will inform the sentencing judge about the timing and extent of the Defendant's cooperation.

It is the last line of the quoted provision that the court especially finds troubling, as the United States only informed the court about the extent of Defendant's cooperation after the court essentially ordered it to. There should be "fairness in securing agreement between an accused and a prosecutor" and when such an agreement "rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971). In this plea agreement, the prosecutor committed to "furnish the Defendant an opportunity to provide 'substantial assistance.'" It is patently unfair and offensive for the prosecutor to dangle such a promise in front of a defendant without also implicitly committing to make a good faith effort to follow up on the information he provides to determine his worthiness for a reduced sentence. To fairly furnish him such an opportunity, it is expected that the information provided would be investigated, or at the very least, if not investigated, the prosecutor would refrain from asserting to the sentencing judge that such information was worthless.

## CONCLUSION

In conclusion, the court intends to send a strong message in its written decision today. The caption in this case is *THE UNITED STATES OF AMERICA v. RICHARD GAPASIN, JR.* The United States of America is one government, not 5 mini governments – not the United States of the Attorney General's Office, not the United States of the Drug Enforcement Agency, not the United States of the Postal Inspection Service, not the United States of the Federal Bureau of Investigation, and not the United States of Homeland Security Investigations.

There are certain limitations judges must abide by, but equally as important, there are certain expectations that both our federal prosecutors and agents will deliver. There is an

expectation of leadership, communication, coordination, and investigation, just to name a few. As in the case before this court, and all others similarly situated, these expectations and duties can only be accomplished by the assigned prosecutor and the investigative agents. A cooperating defendant, pursuant to a plea agreement, has zero control over how a multi federal law enforcement agency investigative debriefing will proceed.

Reasons given on how this Defendant's case came to this point are plentiful as discussed above, but when it is all said and done, certain consequences are triggered. Not only will Defendant suffer the loss of his liberty, but the citizens of our island will have also potentially suffered and continue to suffer rampant drug mail and street crimes and public corruption in our local governmental agencies. One may be lackadaisical and excuse this as mediocrity. This court says enough is enough. This is truly an injustice. As was eloquently stated by Justice Sutherland in *Berger v. United States*, 295 U.S. 88 (1935):

> *The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that **justice** shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor–indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.*

The prosecutor's means to bring a just sentence here is not legitimate. He has argued that his recommended sentence at the low end of the applicable guideline range reflects the level of Defendant's cooperation, especially considering Defendant's pre-sentence conduct. But he made several representations to the court that the value was essentially zero. Such a recommendation is based on speculation and cannot fairly take into account Defendant's cooperation, as no one knows the true value of it. Furthermore, it was the prosecutor that prepared and signed a plea agreement committing to give Defendant a fair shot at obtaining a

reduction. Considering the testimony heard, the court finds that the offer was not genuine. In addition, he is confused about the rule of law pertaining to the safety valve and 5K1.1 provisions. The United States should not derive the benefits of a plea agreement without paying the agreed-upon price.

On the other hand, as pointed out by the prosecutor, granting a variance on the basis of Defendant's cooperation would also involve a certain degree of speculation, in that some of the information he did provide would have been useful had it been pursued. Furthermore, while law enforcement officers were unable to fully vet all the information, some of the credible law enforcement witnesses provided specific reasons for why a substantial portion of the information was of little value or merely historical knowledge.

The court finds the requested 36-month sentence unreasonable. But in order to balance the need of the court to defer to law enforcement's evaluation, while at the same time giving Defendant the benefit of his bargain, the court will grant a variance, the amount of which will be announced in court on July 13, 2021.

**SO ORDERED.**



**/s/ Frances M. Tydingco-Gatewood**
**Chief Judge**
**Dated: Jul 13, 2021**